FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 FEB 23  PM 1:59

LORETTA G. WHYTE
CLERK

## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DUSTIN EUGENE LOUGHRIDGE** | **CIVIL ACTION** |
| **VERSUS** | **NO:  04-1904** |
| **WARDEN JAMES D. MILLER, JR., ET AL** | **SECTION: "A"(4)** |

### PARTIAL REPORT AND RECOMMENDATION

Before the Court is a **Motion to Dismiss (Rec. Doc. No. 25)** filed by the defendants, Warden James D. Miller Jr., Captain Ronald Branch, Colonel Wayne Seal, EMT Glen Samuel, and Teresa Breland, who seek dismissal of the plaintiff's complaint because they enjoy qualified immunity from plaintiff's claim for damages.  This motion and the entire case were referred to the undersigned United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**.

On August 5, 2004, the undersigned Magistrate Judge conducted a hearing pursuant to *Spears v. McCotter*[1] and its progeny with the *pro se* plaintiff and counsel for the defendants participating

---

[1] 766 F.2d 179 (5th Cir. 1985).

___ Fee___ _____
___ Process_____
 X  Dktd_____
___ CtRmDep_____
___ Doc. No. _____

by telephone.[2]  Upon review of the record, the Court has determined that the pending motion can be disposed of without an Evidentiary Hearing.

I.    **Factual Summary**

    A.    **Complaint**

The plaintiff, Dustin Eugene Loughridge ("Loughridge") is an inmate housed in the Washington Correctional Institute ("WCI") in Angie, Louisiana.  Loughridge filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983 against WCI Warden James D. Miller Jr., Captain Ronald Branch, Colonel Wayne Seal, and the State Fire Marshal.  Although not clearly outlined in the Complaint, Loughridge alleges, under a broad reading, that he sustained injuries when he fell while attempting to climb into a top bunk in his cell at WCI.

He further claims that he notified Warden Miller through the grievance system about his complaints of pain.  Loughridge complains that Warden Miller failed to assure that his medical treatment improved.

He also alleges that Captain Branch is the safety officer and disregarded his complaints about his fall.  Loughridge claims that he also told Colonel Seal about the difficulty he has climbing into the bunk and he too disregarded Loughridge's complaints.

Loughridge also seeks damages against the State Fire Marshal for failing to assure that the prison has an adequate means of climbing into the bunk for safety purposes.  He seeks injunctive relief in the form of a ladder or stool for climbing into the bunk.  He also seeks $100,000 in

---

[2]Rec. Doc. No. 5.  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims.  *Spears*, 766 F.2d at 180.  The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barrientos*, 926 F.2d 480, 481 (5th Cir. 1991).  The plaintiff was sworn prior to testifying.  The cassette tape recording of the hearing is being placed in the custody of the Court Reporting Unit along with a copy of this report. (Rec. Doc. 15)

compensation for the pain and suffering he sustained, transfer to another facility, and reimbursement of court costs.

**B.**    **The *Spears* Hearing**

Loughridge testified that he is incarcerated at WCI after his conviction for illegal possession of stolen goods and a probation violation. He also recalled having a forgery charge. He testified that he received a seven year sentence in 2001.

He further testified that he used the cell bars to climb into his upper bunk at WCI as he was instructed to do. On one occasion, he accidently fell onto his back. He climbed back into the bunk and went to sleep.    He testified that he was not concerned until he began experiencing pain. He stated that he reported to his assigned work duty even though he was in great pain and his leg was tingling.

Loughridge further testified that he reported the incident to a sergeant when he reported to work because he could not perform his work duties. Loughridge stated that he was given a 24-hour duty status which allowed him to rest that day and return to work the next day. Loughridge testified that he saw a registered nurse who told him that he probably had a pulled muscle and that he should not make any more emergency sick call requests. He testified that he had difficulty walking because of the tingling in his leg.

Loughridge also testified that he finally returned to work in the field on April 13, 2004 and he continued to experience pain. He stated that he again declared his condition to be an emergency and the medical staff told him that it was not.

He further alleged that, when he was finally examined by a doctor, he was told that he had a slipped disc and a pinched nerve. He stated that the doctor recommended him for an MRI to determine the exact cause of his pain. He stated, however, that he was still waiting for the MRI. He

further testified that the doctor at the Medical Center of Louisiana at New Orleans (f/k/a Charity Hospital) prescribed an air crate mattress for his back, a special pillow and other medication.

Loughridge further complained that the prison officials took him off of the pain medication because of a disciplinary charge. He stated that he was given the medication by a nurse but he had the medicine in his hand when he was confronted by Sergeant Ronnie Morris, who is not a defendant herein. He testified that the officer charged him with possession of contraband. He further testified that he entered a plea of not guilty and he had a disciplinary hearing. He testified that he was accused of the disobedience because the prison has a policy that requires inmates to take medication immediately. He also testified that Sergeant Morris told him that if he retaliated against him by filing grievances he would put Loughridge back on extended lock-down. Loughridge stated that he ultimately was placed on extended lock-down because he was found guilty of the contraband charge.

He also stated that he filed a grievance against Morris and that he recently appealed the denial. He conceded, however, that he did not seek further review of his grievance claims in the state courts.

Loughridge testified that he filed suit against Warden Miller because he is the supervisor over WCI and the Sun Unit. He stated that, as the supervisor, Miller was responsible for providing ladders to the inmates assigned to the upper bunks. He also testified that he wrote to Miller after he fell and requested information regarding the method he was required to use to get in the upper bunk. Loughridge stated that Miller referred the matter to the safety officer, Captain Branch.

He testified that Branch advised him in writing to use the cell bars as a means of getting in and out of the top bunk. Loughridge also testified that Branch failed in his duty to protect him. He claims that Branch did not provide the inmates with a safe way to get into the upper bunks or have ladders installed.

4

Loughridge also complained that he was given other disciplinary write-ups because he made a few requests for emergency medical treatment. He testified that he needed to see the doctor for the pain from his fall. He stated that he did not want to file a regular sick call request because he would be charged $3.00 for each request. He claims that this fee is waived if his visit is an emergency.

He complained that, at one of these visits, the EMT, Glen Samuel, told him that he should quit crying like a "um" and "I am the officer here just shut the F- up." Loughridge stated that Samuel would not let him see the doctor. As a result, Loughridge filed a grievance complaint against Samuel. He testified that Warden Miller dismissed the grievance because he found that Samuel used the proper procedure to treat him. Loughridge complains that Samuel heard about the grievance complaint and told Loughridge that he would get even with him.

Loughridge went on to testify that he filed this suit against Colonel Seal because he is the Unit Manager at WCI and received his written complaint about the fall. He also complained that Colonel Seal told him that something might happen to him if he continues to file grievance complaints.

Loughridge also stated that he filed suit against the State Fire Marshal because he permitted the prison to be in noncompliance with the state fire code. Loughridge also testified that, after his incident, WCI installed ladders on the bunk beds in the Sun Unit. Loughridge alleged that the prison officials' negligence caused him to incur medical expenses and the need to seek medical attention. He complains that they are retaliating against him because he has filed this lawsuit. He testified that he seeks punitive damages, transfer and compensatory damages.

## C.    Amended Complaint (Rec. Doc. No. 19)

After the *Spears* Hearing, Loughridge filed an Amended Complaint in which he also invoked the supplemental jurisdiction of the court over his unspecified state tort claims arising out of his

alleged fall while climbing into his bunk on April 4, 2004.  He also added as defendants Nurse Practitioner Jamie Wilson, Teresa Breland, RN, and EMT Glen Samuel.  He also designated that each defendant is named in his or her individual and official capacity.

In the amended complaint, Loughridge also reiterated and expanded upon the allegations made orally at the *Spears* Hearing.  In addition, he also indicated that on April 5, 2004, he sought medical assistance for the injuries by making a self-declared emergency request for care.  He alleges that he was seen by the Nurse Practitioner Jamie Wilson, who arranged for x-rays to be taken and 24 hours with no duty assignment.  She also directed that he use an Ace bandage compress to his right knee and lower back for 24 hours until he could be seen by a prison doctor.

Loughridge alleges that he has been denied adequate medical care, deliberate indifference to his safety, and denial of due process in the disciplinary proceedings.  He seeks monetary damages and injunctive relief, including his release from disciplinary confinement.

In response to the complaints of Loughridge, the defendants filed the subject motion seeking dismissal on the grounds that they are entitled to qualified immunity from being sued for the acts about which Loughridge complains.

The Court, before considering the motion will conduct its statutory review for frivolousness.  Initially, Loughridge's complaints raise several issues.

**II.     Standards of Review for Frivolousness**

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiffs' claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

**III.    Analysis**

      **A.     Defendants in Their Official Capacity**

Loughridge names the defendants in both their individual and official capacities. However, the claims against the defendants in their official capacity are frivolous and otherwise fail to state a claim for which relief can be granted.

In order to succeed on a claim under § 1983, a plaintiff must prove both the constitutional violation and action that was taken by a "person" under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson*, 454 U.S. 312 (1981). A state actor sued in his or her official capacity is not considered a person for purposes of suit under § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). Instead, the action would be considered one against the their employer, in this case, the Louisiana Department of Corrections ("DOC"). *See Monell v. Dep't of Social Services*, 436 U.S. 658, 690 n. 55 (1978).

The DOC is a department within the Louisiana state government. La. Rev. Stat. Ann. § 36:401. For Eleventh Amendment purposes, the DOC is considered an arm of the state since any judgment against it or its subdivisions necessarily would be paid from state funds. *Anderson v. Phelps*, 655 F. Supp. 560, 564 (M.D. La. 1985). Therefore, suit against the defendants in their official capacity is suit against the State of Louisiana, which is prohibited by the Eleventh Amendment. *Muhammad v. Louisiana*, 2000 WL 1568210 (E.D. La. Oct. 18, 2000).

The Eleventh Amendment forbids federal courts from entertaining a suit for monetary damages brought by a citizen against his own State. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185-86 (5th Cir. 1986). A state may expressly waive this Eleventh Amendment sovereign immunity. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (holding that a state's consent to suit against it in federal court must be expressed unequivocally); *Welch v. Dep't of Highways*, 780 F.2d 1268, 1271-73 (5th Cir. 1986). However, the State of Louisiana has not done so. To the contrary, La. Rev. Stat. Ann. § 13:5106(a) provides that "no suit against the state . . . shall be instituted in any court other than a Louisiana state court."

Loughridge's claims against the defendants in their official capacity fail to state a claim for which relief can be granted and are otherwise barred by the Eleventh Amendment and therefore seek relief against immune defendants and must be dismissed pursuant to Title 28 U.S.C. § 1915(e) and § 1915A. The Court's review will proceed with respect to the defendants in their individual capacities.

### B.   Supervisory Liability

Loughridge has named both Warden Miller and Colonel Seal in their supervisory role over WCI and Captain Branch. He contends that Miller and Seal did nothing to make Branch, as the safety officer, provide a safe way to climb into the upper bunk.

A supervisory official cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). Moreover, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980).

Supervisory liability may additionally exist "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id.* at 304. An official policy is:

1. a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [government entity] ... or by an official to whom the [entity] ha[s] delegated policy-making authority; or

>2.    A persistent, widespread practice of ... officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [the entity's] policy.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992). A plaintiff may also establish a custom or policy based on an isolated decision made in the context of a particular situation if the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

In this case, Loughridge has not alleged that either Miller or Seal were directly involved in his fall or any claim alleged in this action. Loughridge instead seeks to hold these defendants liable because they were "in charge" of Captain Branch, who allegedly failed to provide him with a safe means of climbing into his bunk.

Loughridge has also shown that Captain Branch, and not the Warden or Seal, instructed him to use the cell bars as a ladder. Although he refers to this as a prison policy, he has not alleged or suggested in any way that either the Warden or Colonel Seal promulgated the policy designed by Captain Branch. He therefore has failed to state a claim of supervisory liability against Warden Miller and Colonel Seals.

His claims against Warden Miller and Colonel Seal, as supervisors, in their individual capacity should be dismissed as frivolous and/or for failure to state a claim for which relief can be granted pursuant to Title 28 U.S.C. § 1915(e) and § 1915A.

C.    **Denial of Grievance Complaints**

Under the broadest of readings, Loughridge appears to allege that Warden Miller may also bear liability because he denied his grievance complaints arising from the fall. These claims are also frivolous.

An inmate has a First Amendment right to file grievances against prison officials on his own behalf. *See Noble v. Schmitt,* 87 F.3d 157, 162 (6th Cir.1996). This right is protected, however, only if the underlying claim is not frivolous. *See Lewis v. Casey,* 518 U.S. 343, 353 n.3 (1996) ("Depriving someone of a frivolous claim ... deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.")

Furthermore, inmates generally have no constitutional right under the First or Fourteenth Amendments to an effective grievance procedure. *See Wilcox v. Johnson,* 85 F.3d 630, 1996 WL 253868 at *1 (6th Cir. May 13, 1996)(Table, Text in Westlaw); *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1994); *Buckley v. Barrow,* 997 F .2d 494, 495 (8th Cir.1993); *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991); *Flowers v. Tate,* 925 F.2d 1463, 1991 WL 22009 at *1 (6th Cir. Feb. 22, 1991) (Table, Text in Westlaw). In other words, there is no constitutional guarantee that the inmate will be satisfied with the responses given to his grievance complaints by the prison officials. *Id.*

In this case, Loughridge does not allege that he was denied the ability to file grievance complaints or that Warden Miller harbored any ill will against him for filing the grievances. Loughridge's claim is instead that the Warden's response to his grievances complaints were not satisfactory. In this regard, Loughridge has failed to state a claim against Warden Miller. Therefore, this claim against Warden Miller also should be dismissed as frivolous and/or for failure to state a claim pursuant to Title 28 U.S.C. § 1915(e) and § 1915A.

**D.    Denial of Due Process in the Disciplinary Proceedings**

Loughridge also complains that he was not afforded the opportunity to request an investigation and call witnesses during his disciplinary proceedings regarding his emergency sick call requests. The Supreme Court, however, has placed limitations on the inmate's ability to challenge disciplinary processes under § 1983.

In *Sandin v. Connor*, 515 U.S. 472, 481-83 (1995), the Supreme Court held that analysis of a prisoner's due process claim relating to prison disciplinary action begins with determining whether a constitutionally protected liberty interest exists. "Liberty interests protected by the Fourteenth Amendment may arise from two sources - the Due Process Clause itself and the laws of the States." *Hewitt v. Helms,* 459 U.S. 460, 466 (1983).

In *Sandin*, the Supreme Court recognized that, although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (citations omitted). Thus, in *Sandin*, when a convicted prisoner was placed in disciplinary segregation for 30 days and the discipline did not inevitably affect the duration of his sentence, the Court held that due process does not require that he be afforded the procedural mechanisms previously prescribed in *Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974),[3] and *Hewitt*, 459 U.S. at 470-72.[4] Loughridge's claim that Wilson and Breland violated his due process rights is also not cognizable under § 1983 and is therefore frivolous.

### E.    State Law Claims against Miller and Seal

Loughridge invokes the Court's supplemental jurisdiction over his state law claims. He has not specified any such claims with particularity other than the defendants' negligence and seeks recovery for the injury he sustained. Nevertheless, to the extent he intends to raise state law claims

---

[3]In *Wolff*, the Supreme Court held that because disciplinary proceedings are not part of a criminal prosecution, the prisoner is not afforded "the full panoply of rights" provided in criminal proceedings. *Wolff*, 418 U.S. at 556. Nevertheless, the *Wolff* court held that, when punishing a prisoner for lengthy periods or when causing loss of privileges or time, prison officials must afford the prisoner some due process in disciplinary proceedings before imposing punishment, including advance written notice of the violation, a written statement from the factfinders, and an opportunity to call witnesses and present evidence. *Id.*

[4]In *Hewitt*, the Supreme Court held that simple disciplinary proceedings where the inmate faced only short disciplinary confinement merely required an informal non-adversary review, some notice of the violation, and the opportunity to make a statement.

against Miller and Seal, in their individual capacity, and against all of the defendants in their official capacities, the Court declines to exercise jurisdiction. 28 U.S.C. § 1367(a).

The "general rule" in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial." *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citation omitted); *accord Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims"). The Court is recommending dismissal of Loughridge's federal claims against the defendants in their official capacity and against Miller and Seal in their individual capacity. His state law claims against the defendants in their official capacities and against Miller and Seal, in their individual capacity, if any, should be dismissed without prejudice.

## IV.   **Defendants' Motion to Dismiss**

Having conducted its statutory duty, the Court will now consider the defendants' motion to dismiss the claims of medical indifference against Nurse Breland and EMT Samuel. Additional consideration will be given to the claims that there were unsafe conditions which Captain Branch was responsible for that contributed to Loughridge's injury.

The defendants contend that they are entitled to qualified immunity from being sued in their individual capacity because Loughridge has failed to allege a personal involvement on the part of Breland, Samuel or Branch.

### A.   **Standard of Review**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court may dismiss a complaint for failure to state a claim upon which any relief may be granted. *See* Fed. R. Civ. P.

12(b)(6). In considering a motion to dismiss, the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). A complaint shall only be dismissed if it is beyond doubt that the plaintiff can prove no facts in support of his claim that would entitle him to relief. *Home Builders Ass'n of Ms., Inc. v. City of Madison, Ms.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

In resolving a Rule 12(b)(6) motion, the court is generally limited to considering only those allegations appearing on the face of the complaint. However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3rd Cir. 1990). Further, the Fifth Circuit has held that when reviewing pro se complaints, the court must employ less stringent standards, look beyond the inmate's formal complaint and consider material subsequently filed as amendments to that complaint. *Howard v. King*, 707 F.2d 215 (5th Cir. 1983); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In *Taylor v. Gibson*, the Court explained:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Taylor v. Gibson*, 529 F.2d 709, 713-14 (5th Cir.1976); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Finally, while conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a Rule 12(b) motion to dismiss, such motions are viewed with disfavor and are rarely granted. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

B.    **Analysis**

1.    **Conditions of Confinement**

Loughridge seeks damages against Captain Branch, the safety officer at WCI.  He contends that Branch caused or contributed to his injury when he failed to have ladders installed in the prison cells and promulgated a method for the inmates to use the cell bars as a ladder.  Loughridge contends that this created an unsafe condition of his confinement in violation of the Eighth Amendment.

Branch contends that he is qualifiedly immune from being sued despite the allegation of that there was an unsafe condition.  A qualified immunity defense is analyzed under a two-step process. *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000); *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998); *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997).

The first step is to determine whether plaintiff has alleged a violation of a clearly established constitutional right under currently applicable constitutional standards.  *Jacobs*, 228 F.3d at 393; *Hare*, 135 F.3d at 325; *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). In determining whether a right is clearly established, this court is confined to precedent from the Fifth Circuit and the Supreme Court.  *Shipp v. McMahon*, 234 F.3d 907, 915 (5th Cir. 2000), *cert. denied*, 532 U.S. 1052 (2001).  Therefore, a right is considered to be clearly established if, based on pre-existing law, the unlawfulness of the conduct in question is apparent.  *Id.*  In other words, the right is clearly established if its "'contours . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (other citations omitted); *accord Foster v. City of Lake Jackson*, 28 F.3d 425, 29 (5th Cir. 1994).

The Eighth Amendment's clearly established prohibition on cruel and unusual punishment forbids punishments "which are incompatible with 'the evolving standards of decency that mark the

progress of a maturing society' . . . or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (citations omitted). To support a conditions of confinement claim, the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm to himself and that prison officials were deliberately indifferent to the inmates individual need for protection from that harm. *Farmer*, 511 U.S. at 834; *Neals v. Norwood,* 59 F.3d 530, 533 (5th Cir. 1995). In order to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference is evaluated in this context by considering "whether, in allegedly exposing the prisoner to danger, the defendant prison official(s) were guided by considerations of safety to other inmates, whether the official(s) took 'prophylactic or preventive measures' to protect the prisoner, and whether less dangerous alternatives were in fact available." *Berg v. Kincheloe*, 794 F.2d 457, 462 (9th Cir. 1986) (*quoting Whitley v. Albers*, 475 U.S. 312, 322 (1986)).

In this case, Loughridge alleges that Branch, as the safety officer, promulgated a policy of requiring inmates to use the cell bars as a ladder to access the upper bunks. The records attached to the complaint and amended complaint, further shows that on May 14, 2004, Captain Branch wrote a grievance response to Loughridge which reads in part as follows:

> I have received the letter you've written to Warden Miller concerning the bunks on Sun Unit. The proper way to get in the bunks on Sun Unit is by using the cell bars as a ladder. Sun Unit opened in 1989 and this has always been the accepted practice and has never been a problem. Statistically speaking didn't become a problem until recently.

It is through having used this method of getting to the upper bunk that Loughridge fell injuring his back and knee. Loughridge alleges that, following his accident, the prison eventually installed ladders to prevent the risk of falls.

Consequently, Loughridge has alleged that Branch knew that the practice of climbing on the bars was a risk to inmate safety. He further alleges that Branch disregarded the risk by requiring Loughridge to continue using the bars to get into his bunk, even after he fell.

Loughridge clearly alleges personal involvement on the part of Branch. He has alleged a constitutional violation sufficient to satisfy the first step of the qualified immunity test.

The second step requires the Court to determine whether the defendant's conduct was objectively reasonable under existing clearly established law. *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001); *Jacobs*, 228 F.3d at 393; *Foster*, 28 F.3d at 428-29. Officials who act reasonably but mistakenly are still entitled to the defense. Qualified immunity gives ample room for mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law. *Anderson*, 483 U.S. at 641; *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986); *Hare*, 135 F.3d at 325. The court can determine as a matter of law whether a defendant is entitled to qualified immunity and, specifically, whether a defendant's conduct was objectively reasonable. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *White v. Balderama*, 153 F.3d 237, 241 (5th Cir. 1998); *Colston*, 130 F.3d at 99.

The Court cannot find on this record that Branch acted with objective reasonableness in requiring inmates to climb on the cell bars to access their bunks. Branch advised Loughridge in the 2004 letter that the practice of using the bars had become a problem. After knowing that Loughridge fell and received injuries, he still made no accommodation for Loughridge. In addition, Loughridge has suggested that prophylactic and preventive measures were not considered but were available, as evidenced by the ladders later installed. At this preliminary stage of the proceedings, the Court cannot find that Branch is entitled to qualified immunity.

17

Finally, the Court also notes that Branch has not addressed the state law negligence claims urged by Loughridge under the Court's supplemental jurisdiction. Thus, for the foregoing reasons, the defendants' motion to dismiss should be denied and the claims against Branch allowed to proceed forward.

### 2. Inadequate Medical Care Claims against Teresa Breland and EMT Glen Samuel

Loughridge next complains that Nurse Breland and EMT Samuel denied him adequate medical care for the injuries and resulting pain cause when he fell from his bunk. He alleges that Breland would not adequately treat his pain and instead directed him to go back to work and stop making sick calls. He also claims that Samuel refused him treatment and scoffed at his complaints.

The State again contends that Breland and Samuel should be qualifiedly immune from suit even though Loughridge alleges that they provided him inadequate or no medical care.

In considering the first step of the qualified immunity test, the standard of conduct imposed on defendants with respect to the medical care of inmates in custody at WCI was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 97, 104. Section 1983 permits recovery for serious physical harm "only where the defendant acts intentionally" or with an analogous state of mind usually described as "deliberate indifference" to deprivation of the victim's constitutional right. *Farmer*, 511 U.S. at 847; *see Manarite v. City of Springfield*, 957 F.2d 953, 955 (1st Cir.), *cert. denied*, 506 U.S. 837 (1992) (citing *Canton v. Harris*, 489 U.S. 378, 388-390 (1989)) (discussing deliberate indifference standard in Fourteenth Amendment municipal liability, police denial of medical treatment case). This is true where the indifference is manifested by prison

18

personnel intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.*

Loughridge has alleged sufficient facts to establish personal involvement on the part of Breland and Samuel and sufficient to state a claim for denial of medical care. The defendants' suggestion that he failed to indicate personal involvement is absurd. Loughridge complains that Nurse Breland and EMT Samuel minimized the severity of his injury and denied him adequate medical care. He claims that Breland told him that he probably had only strained a muscle and that his injuries did not warrant emergency treatment. He also alleges that she told him to return to work in pain without medication and that he should not submit further sick call requests for his complaints.

He also complains that Samuel, the EMT, refused to allow him to see a doctor about his complaints and told him to stop being "a cry baby." He alleges that Samuel refused to provide any treatment because he did not believe his complaints. These claims are sufficient to satisfy the first prong of the qualified immunity test.

The Court also cannot find on this record that Breland or Samuel acted reasonably in denying needed treatment and in instructing Loughridge to stop requesting care. According to the allegations, Loughridge suffered with injuries to his back which were diagnosed after an MRI. His allegations show a deliberate indifference to his medical needs sufficient to avoid a qualified immunity defense.

The motion to dismiss should be denied as moot to the extent it seeks dismissal of the claims against Miller and Seals. However, it should be denied as to Breland and Samuel and the claims against Breland and Samuel should proceed forward.

## V.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Loughridge's § 1983 claims against the defendants in their official capacities be **DISMISSED WITH PREJUDICE** as frivolous, for failure to state a claim for which relief can be granted, and for seeking relief against an immune defendant pursuant to Title 28 U.S.C. § 1915(e) and § 1915A.

It is further **RECOMMENDED** that Loughridge's § 1983 claims against Warden Miller and Colonel Seal, in their individual capacities for supervisory liability and/or denial of grievance, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to § 1915(e) and § 1915A.

It is further **RECOMMENDED** that Loughridge's § 1983 claim alleging the denial of due process in the disciplinary proceedings be **DISMISSED WITH PREJUDICE** as frivolous pursuant to § 1915(e).

It is further **RECOMMENDED** that Loughridge's state law claims against each of the defendants in their official capacities and against Miller and Seal in their individual capacities, if any, should be **DISMISSED WITHOUT PREJUDICE** as the Court declines supplemental jurisdiction.

It is further **RECOMMENDED** that the defendant's **Motion to Dismiss (Rec. Doc. No. 25)** be **DENIED** as to Captain Ronald Branch, EMT Glen Samuel, and Nurse Teresa Breland as Loughridge has sufficiently stated a claim against them in their individual capacities such that the § 1983 and state law claims against them should be allowed to proceed forward.

Finally, it is **RECOMMENDED** that the **Motion to Dismiss (Rec. Doc. No. 25)** be **DENIED** as **MOOT** as to Warden James D. Miller and Colonel Wayne Seal.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this _23rd_ day of _February_____, 2006.


KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

21